UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW JERSEY
------------------------------------------------------------------------x  Docket No.:
                                                                               3:24-cv-09172-MAS-RLS

KEVIN BEASLEY and KEVIN BEASLEY
STUDIO, LLC,

      Plaintiffs,

                                                            **AFFIDAVIT IN REPLY**

     -against-

MICHAEL FANELLI,

      Defendant.

------------------------------------------------------------------------x
STATE OF NEW JERSEY     )
                               ) ss.
COUNTY OF MONMOUTH  )

      **MICHAEL FANELLI**, being duly sworn, deposes and says:

     1.  I am the named Defendant in this matter and do possess some knowledge regarding this lawsuit.

     2.  On or about October 29, 2024, my son, Vincent Fanelli, found a document lying at the foot of the driveway of our home at 1 Denise Ct., Manalapan, New Jersey.  See Exhibit "1" attached to Defendant's motion.

     3.  Vincent and I are the sole residents of our home.

     4.  Prior to finding this document, neither myself, nor Vincent, ever spoke to anybody who was attempting to serve me with legal papers.

     5.  I understand that the process server claims that the attempted service at my house three times: October 22, 2024, October 28, 2024, and October 29, 2024.  At the times service was allegedly attempted, I was not at home.

     6.  Plaintiffs contend that the first attempt of service was on October 22, 2024.  On that date,

1

I spent the morning, until approximately 11:30 A.M., at my wife's house in Brooklyn, New York. I then traveled to Showtime Automotive, located at 3090 Richmond Terrace, Staten Island, NY 10303 to conduct business. En route to Showtime, I communicated with the owner of Showtime via text message. See Exhibit "1." Following my return from Staten Island, I went back to my wife's home in Brooklyn and remained there until late in the evening.

7. At no point on October 22nd did Vincent tell me that he had seen or spoken to anyone attempting to serve me with legal papers, nor was he aware of anyone knocking on the door or ringing the doorbell. I should mention that although Plaintiff claims the doorbell was rung by the process server, the doorbell was and remains inoperable. Any claims that the doorbell was rung by a process server or anyone else are categorically untrue.

8. I understand that Plaintiffs allege that the process server visited my home again on October 28, 2024. I was at home in the morning. Early in the afternoon, I left. Although I do not recall specific information about my whereabouts on that day, I was in Staten Island and Brooklyn at various times, returning home that evening. At no point that day did I ever see or speak to anybody attempting to serve me with legal papers. I also never heard anybody knock on the door.

9. I further understand that Plaintiffs allege the next date of attempted service was the next day, October 29, 2024. Although I do not have a specific recollection of the exact time, I was home in the morning, then left and went to my wife's house in Brooklyn for the remainder of the day. At no point while I was home did I ever see or speak to anybody attempting to serve me with legal papers. I also never heard anybody knock on the door.

10. That evening, on October 29th, I was at my wife's house when Vincent called me on the

phone and informed me that he found papers at the foot of our driveway with my name on them. Neither of us knew what these papers were or what they meant.

11. Additionally, I have seen the photos taken by the process server showing several cars in my driveway, suggesting that there were many people staying at my home.  In fact, I own all those vehicles.  Again, the only people living at my home were myself and Vincent.

12. All the cars in the photographs were at my house because I collect cars, both for work and as a hobby in my personal life.  All five cars (a white 2004 Ford Mustang, a gray 1989 Mercedes E320, a gray 2005 Chevrolet SSR, a white and blue 1987 Chevrolet El Camino, and a white 1984 Jaguar XJS) belong to me.  None of the cars in my driveway were operable, as I was refurbishing them.

13. The only car that I drove at the time, and presently, is a red 2022 Honda CRV.  That car is not in the driveway in the photos submitted by Plaintiffs because I was not at the house when service was allegedly attempted.

14. When I returned home in the evening of October 29, 2024, I called the attorney whose name was on the document found in my driveway, Ms. Shan (Jessica) Chen.  Not having much experience with lawsuits, I asked Ms. Chen what the document was and what it referred to.  In response, she told me that she did not know specific information about the case, and instead only filed the judgment.  Ms. Chen further advised me to write a letter to the Court.  At the time I thought it was a bit irregular, but ultimately, I did write the letter and forwarded it to the Court. See Exhibit "1" attached to Defendant's motion papers

15. In that letter I emphasized that, to my knowledge, I had never been properly served with suit papers, and further that I was unaware of the nature of this lawsuit.

16. Additionally, I have seen the photos provided by Plaintiff apparently showing myself and

3

Mr. Beasley. Although it certainly appears to be me in those photos, I did not immediately remember Mr. Beasley or the transaction, which occurred nearly eight years ago. However, after signing my first affidavit in support of this motion, I went through my old files and uncovered documents related to the subject matter of this litigation, attached collectively as Exhibit "3."

17. These documents show a receipt for the transaction, transfer of title information, and a written contract signed by Mr. Beasley and myself on behalf of Bayview, dated April 7, 2017. The receipt, dated April 5, 2017 shows that Kevin Beasley Studio, LLC paid Bayview $2,500 for the "vehicle's prep for art show." This vehicle prep, as explained in depth in Plaintiffs' complaint and opposition papers, was for the crushing and transportation of a white 2008 Cadillac Escalade to an art show in Manhattan.

18. Exhibit "3" shows that the subject vehicle was purchased by Mr. Beasley from Charles Goodine on March 29, 2017. He then sold the vehicle to me, and title transferred to me, on April 5, 2017. Two days later, Mr. Beasley paid Bayview $2,500 in consideration for crushing and transporting the vehicle to Manhattan. After the vehicle was no longer going to be on display in Manhattan, it was understood that based upon our agreement, it was going to be returned to Bayview. At that point, Mr. Beasley had surrendered all ownership interest in the car.

19. It is standard practice in this business that when vehicles are brought to Bayview for crushing, the titles are transferred to either me or Bayview. I have handled thousands of car transfers throughout my career, and the title is always transferred to either myself personally or Bayview before work on the vehicle begins.

20. Once title was transferred to me on April 5, 2017, the car was legally mine. However, I intended to honor the deal which was made. I informed employees of Bayview about the contract and they were directed to crush and transport the vehicle accordingly. If Plaintiffs'

allegations are correct and the wrong car was delivered to the art show, I had nothing to do with it, and it was completely unintentional. However, even if I did, the car was mine.

21. Later, I received a judgment against me personally in my mail. At this point I contacted counsel to represent me.

22. Accordingly, I ask the Court to set aside the default judgment, for leave to file an Answer, and for a stay on enforcement of the judgment.

_____
Michael Fanelli

Sworn to before me this
3rd day of March, 2025

_____
Notary Public

GALINA LUTSKER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LU6196898
Qualified in Kings County
My Commission Expires November 24, 2028